## Baldwin-Lima-Hamilton Corporation v. Department of Labor & Industry

*Samuel C. Harry, Morgan, Lewis & Bockius,* for appellant.

*Morley W. Baker,* Assistant Attorney General and *William C. Sennett,* Attorney General, for respondent.

BOWMAN, J., October 21, 1969.—This is an appeal by Baldwin-Lima-Hamilton Corporation of Delaware (BLH Del.) from a denial by the Department of Labor and Industry to establish appellant's employer contribution rate at the basic standard rate of .027 for the years 1965 and 1966 rather than at the rate of .040 as previously established by the department.

The statute involved is the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751, and particularly its successor-in-interest provisions as applicable to the employer contribution rate determination process.

The appeal comes before us on a full record made at the administrative level; the facts are not in dispute and those essential to the disposition of the legal issue will be recited in this opinion.

Upon receiving notices of its contribution rates for the years 1965 and 1966 as noted above, appellant timely sought a review of these departmental determinations. A departmental appeal board was convened before which a full record was stipulated. Its report and recommendation was that appellant's position be sustained and its contribution rate for the years in question be fixed at .027 under section 301(a)(1) as provided for new employers without experience rating.

The department, however, did not accept the board's recommendation and, after having received advice from the Attorney General, affirmed its original determination and denied the appeal. This appeal for judicial review followed.

Appellant-employer is Baldwin-Lima-Hamilton Corporation (BLH Del.). It is a Delaware corporation organized on June 24, 1965, and qualified to do business in Pennsylvania on July 6, 1965. It was and continues to be a wholly owned subsidiary of Armour and Company (Armour) which is also a Delaware corporation.

On July 2, 1965, Baldwin-Lima-Hamilton, *a Pennsylvania corporation*, (BLH Pa.) merged with and into Armour. On the same date, Armour transferred the assets it had acquired in its merger with BLH Pa. to BLH Del.

At the time of the merger of BLH Pa. with and into Armour, neither owned stock of the other, and as between these two corporations it is agreed by the parties here that neither was "owned or controlled" by the other within the meaning of section 301(d)(1)(B) of the act. As between Armour and BLH Del., on that same date, however, BLH Del. was undisputedly "owned or controlled" by Armour and became the transferee of those assets of Armour acquired by it in its merger with BLH Pa.

At the date of its merger with and into Armour, the employer reserve account balance of BLH Pa. under the provisions of the act was $294,279. On that same date, Armour's employer reserve account balance was $674,666. Under section 301(d)(1)(A) of the act, Armour, as the successor-in-interest of BLH Pa. with the joinder of BLH Pa., could have sought transfer to its reserve account of the reserve account balance of BLH Pa. It did *not* make application for such a transfer, however, and mandatory transfer under section 301(d)(1)(B) of the BLH Pa. reserve account to Armour was not operative because neither was "owned or controlled" by the other. If voluntary transfer had been sought and approved by the department, the resulting combined reserve balance of Armour would have been $968,945.

While section 301(d)(1)(A) providing for voluntary transfer of reserve accounts to successors-in-interest is concededly not directly in issue in this case, it does play an important role in the issue to be resolved. It provides, in pertinent part:

"Where an employer . . . transfers his or its organization, trade or business, in whole or in part, to a successor-in-interest who continues essentially the same business activity of the whole or part transferred, such successor-in-interest may, prior to the

end of the calendar year subsequent to the calendar year in which the transfer occurred, make application for transfer of the whole, or appropriate part, of the experience record and reserve account balance of the preceding employer to the successor-in-interest, including credit for the years during which contributions were paid by the preceding employer. The department shall transfer the whole or appropriate part of such experience record and reserve account balance of the preceding employer only if such preceding employer has joined in such application and has filed with the department such supporting schedules or other information with respect to such experience record and reserve account balance as the department may require. If the application for such transfer is filed in accordance with the rules and regulations of the department, the department may allow such transfer only if all contributions, interest and penalties owing by the predecessor have been or are paid at the time such application is filed with the department."

Section 301(d)(1)(B) establishes a mandatory successor-in-interest status under certain circumstances. When met, it is required that the reserve account balance of an employer be transferred to the successor-in-interest. This subsection provides:

"Notwithstanding the provisions of paragraph (A) of this subsection, with respect to any transfer by an employer subject to the contribution provisions of this act of its organization, trade or business, in whole or in part, whether such transfer was by merger, consolidation, sale or transfer, descent or otherwise, the department shall transfer the experience record and reserve account balance (whether positive or negative) of such employer to its successor-in-interest if it finds that (I) such employer was owned or controlled by or owned or controlled the succes-

sor-in-interest either directly or indirectly, by legally enforceable means or otherwise or (II) both such employer and successor-in-interest were owned or controlled either directly or indirectly, by legally enforceable means or otherwise, by the same interest or interests."

It is the position of the department that the reserve account balance of BLH Pa., being an "asset" of that corporation, was transferred to and became the property of Armour incident to their merger, and that by operation of the mandatory transfer provisions of section 301(d)(1)(B) the transfer of that reserve account from Armour to BLH Del. necessarily follows, as BLH Del. is an owned or controlled successor-in-interest to Armour of that part of Armour's property which it had acquired in its merger with BLH Pa.

This concept is reflected in the advice of the Attorney General received by the department and upon which it apparently relied in rejecting a contrary recommendation by the departmental appeal board. This advice stated:

"A review of the documents submitted by you discloses that the terms of the merger agreement were sufficiently comprehensive to bring about the transfer of the employment experience of Baldwin-Lima-Hamilton to Armour and Company. The absence of any final [sic] * application of transfer of this experience would not prevent this result.

"In view of the foregoing, I would not recommend the sustaining of the appeal or the granting of the refund."

The insurmountable barrier to acceptance of the department's ultimate conclusion is the initial premise upon which it rests, that the reserve account bal-

---

* The word "formal" rather than "final" was probably intended.

ance of BLH Pa. was an asset in the hands of Armour as a result of its merger with BLH Pa. This begs the very question in issue.

An employer reserve account balance is purely a creature of the Unemployment Compensation Law. Absent the statute, it simply would not exist. As created by the statute, it is but one element of a concept known as experience rating by which an employer's contribution rate is determined. The experience rate to which a particular employer will be entitled is based upon three factors: (1) the funding factor; (2) the experience factor, and (3) the State Adjustment factor. It is in the funding factor that the employer's reserve account plays a part, and it is essentially a book account on the records of the department to which the employer's contributions are credited and against which certain benefit claims are debited. At any one time it may reflect a credit or debit balance.

This is the "asset" of BLH Pa. which the department urges passed by operation of law to Armour when the two merged under a merger agreement providing for the transfer and assignment of all property, franchises, etc., of BLH Pa. to Armour upon the effective date of the merger.

Assuming arguendo that immediately prior to the merger the reserve account balance of BLH Pa., being a credit, was something of value to it and thus an asset of BLH Pa., it does not and cannot follow that by application of principles of contract law or corporation law it was assigned or transferred to Armour and thus became an asset in its hands. This is so because the statutory law which created the concept of reserve accounts for experience rating purposes (and thus gave it whatever value it has as to a particular employer) just as definitively speaks on the subject of its transferability to the successor-in-inter-

est of the employer in whose name the reserve account stands.

It first recognizes a voluntary transfer of an employer reserve account in whole or in part to successor-in-interest subject to certain conditions and limitations: Section 301(d)(1)(A). The parties here agree that such a voluntary transfer of BLH Pa.'s reserve account to Armour was not sought.

It next requires such transfers under certain conditions. It is conceded by the department that the mandatory provisions of section 301(d)(1)(B) are not applicable to the merger of BLH Pa. and Armour, as neither was owned nor controlled by the other. It is at this point that we totally exhaust any provisions of the Unemployment Compensation Law by which BLH of Pa.'s reserve account could have been transferred or was transferred by mandate to Armour. Inasmuch as Armour neither sought voluntary transfer nor was subject to mandated transfer of the reserve account of BLH Pa., it cannot be said that it was something of value in the hands of Armour or that the full amount of the reserve account was transferred to Armour by operation of law. Whatever value it had to BLH Pa. was at this point entirely lost. Having never been transferred to Armour, there was no reserve account balance of BLH Pa. in the hands of Armour upon which section 301(d)(1)(B) could operate to mandate further transfer from Armour to BLH Del.

For the foregoing reasons, we conclude:

1. That the employer reserve account of BLH Pa. immediately prior to its merger with Armour was not an "asset" in the hands of Armour by operation of law upon the effective date of the merger, and Armour did not become a transferee thereof by reason of the provisions of section 301(d)(1)(A) or 301(d)(1)(B) of the Unemployment Compensation Law;

2. That the department erred as a matter of law in further transferring the employer reserve account of BLH Pa. through Armour to BLH Del. under the provisions of section 301(d)(1)(B) of said act;

3. That in doing so, the department improperly determined the employer contribution rate of BLH Del. for the years 1965 and 1966 to be .040 instead of .027 as otherwise applicable to new employers without experience rating under section 301(a) of said act.

We enter the following

### ORDER

And now, October 21, 1969, the appeal of Baldwin-Lima-Hamilton Corporation, a Delaware corporation, is hereby sustained, the employer contribution rates of that corporation for the years 1965 and 1966 as heretofore determined by the Department of Labor and Industry are hereby stricken, and the Department of Labor and Industry is hereby directed to redetermine the employer contribution rate of said corporate employer for the years 1965 and 1966 consistent with this opinion.